IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 299 |
| | ) | Judge John J. Tharp Jr. |
| TIMOTHY DORSEY, | ) | |
| Defendant. | ) | |

## TIMOTHY DORSEY'S SENTENCING MEMORANDUM

Now Comes Defendant, TIMOTHY DORSEY, by his attorney JOSHUA B. ADAMS, and respectfully requests, pursuant to 18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, that this Honorable Court find Mr. Orozco's total offense level at 19, Criminal History category II, and impose a sentence of time served. Moreover, Mr. Dorsey states that the government has not established his involvement in Phillip Scheau's murder. As a result, such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing in § 3553(a). In support of his request, Mr. Dorsey states as follows.

I. Mr. Dorsey's Sentencing Request

Tim accepts his responsibility for the conduct that brings him before this honorable court. For his actions that he pled guilty to, Timothy is ashamed and remorseful. However, Timothy maintains that he had no involvement in Phillip Schau's murder. It is important to note that Mrdjenovich admitted to killing Mr. Schau, and a jury believed his confession and convicted him of first degree murder in Cook County. Now, the government seeks to place responsibility for Mr. Schau's death on Mr. Dorsey. While the government has not charged Mr. Dorsey with first degree murder, despite ample opportunity, it now proceeds

1

under the more liberal standard of preponderance under the Section 3553(a) factors. Even under this more relaxed standard, the government cannot meet its burden. As a result, Mr. Dorsey respectfully requests this honorable court sentence him to a term of time served. Such a sentence is sufficient, but not greater than necessary to achieve the purposes of §3553(a).

**II.** **Legal Standard**

In *United States v. Booker*, the Supreme Court effectively rendered the United States Sentencing Guidelines (USSG) advisory. 543 U.S. 220 (2005). However, the sentencing court is still required to follow the list of factors enumerated in § 3553(a). In *Rita v. United States*, the Court held that district court judges are required "to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing in § 3553(a)." 127 S.Ct. at 2469.

Post-*Booker*, the district court should place "no limitation" on the information concerning the background, character, and conduct of a person convicted of an offense. *See* 18 U.S.C. § 3661; *Booker*, 125 S.Ct. at 760. There are several "individual characteristics . . . not ordinarily considered under the Guidelines," but are still "matters that § 3553(a) authorizes the sentencing judge to consider." *Rita*, 127 S.Ct. at 2473 (Stevens, J., concurring). With these principles in mind, we turn to Mr. Dorsey's proposed sentence.

III. **A SENTENCE OF TIME SERVED IS SUFFICENT TO ACHIEVE THE PURPOSES OF PUNISHMENT STATED IN 18 U.S.C. §3553(a).**

1. *Mr. Dorsey is not responsible for Phillip Scheau's murder*

The government relies on Mr. Mrdjenovich's testimony at his state court murder trial for the bulk of its theory that Mr. Dorsey played a role in Mr. Scheau's death. This is fatal to their claim for two reasons. First, Mrdjenovich admitted to committing perjury and any statements he made should be viewed with the caution and great care. Second, Mr. Dorsey never had an opportunity to cross-examine Mrdjenovich or any other of the witnesses against him. While, Mr. Dorsey acknowledges that the Confrontation Clause does not apply to sentencing hearings, his argument is more particular. Each witness the government cites against Mr. Dorsey had a bias towards him. It is undisputed, in fact Mr. Dorsey admits that he treated his workers poorly, even to the level of abusive. Each of these former workers, especially Mrdjenovich have a strong motive to place blame on Mr. Dorsey as the ultimate way to escape from him.

First, Mrdjenovich testified in his own defense at his trial. The jury ultimately did not believe him. More importantly, Mrdjenovich made a post-arrest admission to shooting Mr. Scheau. While at trial, Mrdjenovich further admitted to lying before the Grand Jury. Because he committed perjury, the entirety of his testimony should be regarded with caution and great care. Ultimately, whether he regrets his decision to confess, Mrdjenovich recanted his confession before the jury and placed the blame on Mr. Dorsey. This strategy ultimately proved unpersuasive. Moreover, the cross examination at the Mrdjenovich trial was relegated to issues of the defendant's credibility, not whether Mr. Dorsey actually made those statements. In fact, Mr. Dorsey continues to deny that he said he would murder Phillip Scheau.

3

Additionally, the forensic evidence recovered at the scene of the crime does not corroborate Mrdjenovich's story. First, officers recovered Mr. Scheau's wallet and belongings far away from the crime scene. Presumably, Mrdjenovich took Mr. Scheau's wallet after he ambushed him and spread the contents along his escape path. However, Mrdjenovich's original confession does not include any mention that he robbed Mr. Scheau and took his wallet. Nor does the location of these items corroborate Rob Fuente's escape path based on Mrdjenovich's trial testimony. Plainly put, Mrdjenovich told so many versions of Mr. Scheau's murder that this Court is left with ample doubt as to what exactly happened. Neither version of Mrdjenovich's story should be taken as fact no should this Court rely upon it to meet even the preponderance standard to warrant an above guideline sentence.

2. *The nature and circumstance of Mr. Dorsey's personal history and characteristics mandate a below guidelines sentence.*

As he reported in the PSI, Mr. Dorsey's mother died when he was two, and his father did not play an active role in Tim's life. PSI., ¶ 121. As sons learn from their fathers, Tim's own father was a pimp. *Id.* After Tim's mother died, he and his sister lived with their grandmother. Tim saw his father only once a month. *Id. at* ¶113. A young boy needs a strong father figure to teach appropriate behaviors and to serve as a positive role model. Therefore, it is of little surprise that Tim stepped into the same role as his father. To him, this behavior seemed normal and socially acceptable. Growing up around prostitution Tim did not have anyone to guide him or teach him socially acceptable behavior. As a result, he became a pimp as well. He liked the money, and was never told otherwise. Despite serving separate terms of imprisonment for pimping, Tim continued to

4

return to this life-style. As it is ingrained in him, he had a hard time choosing a different life, along a different path.

To compound matters, Tim's foster parents emotionally abused him from a young age. Abandoned by his father, Tim had no immediate family to raise him after his grandmother died. The foster parents who took him in did so, as Tim believed, only for the financial aspect. These were not loving and caring homes. In fact, Tim's sister reported that the children were locked in the basement when other adults paid visits. Besides the emotional abuse, Tim was sexually abused when he was 14 years old. His abuser was known to him as a member of a golf course where he worked. PSI., ¶134.

Tim has never received mental health counseling for the abuse he suffered from a very young age. Enrolling in mental health and psychological treatment while in custody and after his release would reap significant benefits for Mr. Dorsey. More prison time is not the answer. That merely places a bandage on a bullet wound. Tim never received treatment in the past. Perhaps now, while he is in custody he will finally confront his demons. Mental health treatment will teach him socially acceptable behaviors, and allow him to cope with the suffering from his past. This will further ensure the court that Tim will not recidivate and appear before this court on violations or a return to the same conduct.

3. *A guideline sentence protects the public from further crime*

Section 3553(a)(2)(C) requires the judge to consider the "needs for the sentence imposed . . . to protect the public from further crimes of the defendant." The purpose of this section is "particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983). The

Commission has further found that chances of recidivism decreases as an individual gets older. Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates. Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent."

(http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal_History.pdf) (last visited 10/25/19). Tim does pose a risk of recidivism based on his prior convictions. However, Tim feels that mental health treatment would be beneificial. Because he has never dealt with the history of abuse, a lengthy sentence would not protect the public or deter against future criminal conduct. Rather, a guideline sentence accompanied with conditions of mental health treatment will protect the public from any theoretical future crimes.

## CONCLUSION

Based on the foregoing, Mr. Dorsey respectfully requests that this Honorable Court impose a sentence of time served. A careful examination of the §3553(a) factors, provide that such a sentence is sufficient, but not greater than necessary to achieve the goals of §3553(a).

Respectfully submitted,

s/ Joshua B. Adams
Joshua B. Adams
Counsel for Timothy Dorsey

Joshua B. Adams
LAW OFFICES OF JOSHUA B. ADAMS, P.C.
53 W. Jackson Blvd., Suite 1515

6

Chicago, IL 60604
(312) 566-9173

## CERTIFICATE OF SERVICE

      I, Joshua B. Adams, an attorney, certify that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document: DEFENDANT'S SENTENCING MEMORANDUM, was served on, November 3, 2019, to all parties of record via the CM/ECF system.

                                          s/ Joshua B. Adams
                                          Joshua B. Adams